UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN THE MATTER OF THE ARREST OF   )
ALEX FRAGA AND KEVIN FRAGA       ) Case No.:
                                 )
                                 )

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Marc Powell, Task Force Officer ("TFO"), Drug Enforcement Administration ("DEA"), United States Department of Justice, being duly sworn, state under oath as follows:

### A. Introduction

1. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to sign a criminal complaint.

2. I am a Massachusetts State Police ("MSP") Trooper and have been so since my graduation from the State Police Academy in New Braintree, Massachusetts, in April of 2005. I am currently assigned to the Cape and Islands District Attorney's Office/Cape Cod Narcotics Task Force, where I am also a full-time Task Force Officer ("TFO") at the Drug Enforcement Agency ("DEA")/Cape Cod Task Force. Prior to my current assignment, I was a Trooper in the South Yarmouth, Dartmouth, and Bourne Barracks.

3. I have been in the Detective Unit for approximately 8 years. I have assisted, initiated, and/or participated in numerous narcotics investigations that have led to arrests and convictions for violation of Massachusetts drug laws and seizure of drugs, firearms, and assets. I have received training from the Massachusetts State Police in criminal investigations, including narcotics investigations. I have also attended training conducted by the New England Narcotics Enforcement Officers Association. I have also received training at several seminars for homicide

investigation and other serious and violent crimes. In the course of my police career, I have participated in numerous investigations involving homicide, narcotics, sexual assault, child abuse, computer related crimes, and other felony investigations. I have participated in numerous search warrant executions for these investigations.

4. Since becoming a TFO with the DEA, I have conducted numerous investigations concerning unlawful drug possession, importation and distribution in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), 846, 952, 960 and 963, as well as the unlawful possession and use of firearms in furtherance of drug trafficking and crimes of violence in violation of Title 18, United States Code, Sections 924 (c), 1951, and 1959. I have extensive experience reviewing intercepted and recorded conversations between target subjects, amongst others. I also have participated in physical surveillance, the introduction of undercover agents, the execution of search warrants, debriefings of defendants, informants and witnesses, and the review of telephone, financial, and drug records. Through my training and experience, I have become familiar with the manner in which illegal drugs, including heroin, fentanyl and cocaine, are imported, transported, stored, and distributed, and the methods of payment for such drugs. I have also become familiar with the appearance, including the color and texture, of such drugs. Based on this experience, I am able to identify substances that are consistent in their appearance, texture, and packaging with narcotics, including heroin, fentanyl, cocaine, marijuana or oxycodone pills, and that I believe to be such drugs.

5. The facts and information contained in this affidavit are based on my personal knowledge as well as the observations of other law enforcement agents and officers involved in this investigation. All observations that were not personally made by me were related to me by the person who made the observations. This affidavit is not intended to include each and every

fact and matter known to the government pertaining to this investigation, but rather only facts necessary for the establishment of probable cause for the arrest of Alex FRAGA and Kevin FRAGA on August 17, 2017 for possession of a mixture and substance containing a detectable amount of fentanyl/heroin and cocaine with the intent to distribute, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C), and attempted possession of said narcotics with the intent to distribute, in violation of Title 21, United States Code, Section 846.

### B. Overview of Alex FRAGA and Kevin FRAGA

6. Fentanyl is a very potent narcotic, and it is classified as a Schedule II controlled substance under the Controlled Substance Act. Likewise, heroin is similar to fentanyl, in that it is an opiate, and it is classified as a Schedule I controlled substance under the Controlled Substance Act. Cocaine is a Schedule II controlled substance. I know from my training and experience that quantities greater than ½ to 1 gram of a mixture and substance containing fentanyl/heroin or cocaine are for distribution as opposed to for personal use.

7. Alex FRAGA ("A-FRAGA"), a.k.a. "Rico," born in 1992, currently resides at 34 Balsam Way in Yarmouthport, MA, with his brother Kevin FRAGA (K-FRAGA). Federal narcotics investigators have conducted a lengthy investigation into A-FRAGA, and this investigation has shown that A-FRAGA sells heroin and/or mixtures of heroin and fentanyl on a consistent basis to both lower-level dealers and users.

8. Kevin FRAGA ("K-FRAGA"), born in 1993, also resides at 34 Balsam Way in Yarmouthport, MA. Federal narcotics investigators have also conducted a lengthy investigation into K-FRAGA, and this investigation has shown that K-FRAGA distributes large quantities of heroin and/or mixtures of heroin and fentanyl on Cape Cod.

### C. Probable cause to arrest Alex and Kevin FRAGA

9. On August 16, 2017, in the early afternoon, investigators watched as K-FRAGA

drove his Jeep Cherokee to the Best Western Hotel, located at 1470 Iyannough Road, Hyannis, Massachusetts 02601. Based on my training and experience, I know that it is common for drug dealers to use hotels on Cape Cod to sell drugs. That afternoon, investigators listened to a telephone call between K-FRAGA and a co-conspirator. In the call, K-FRAGA stated that he was renting a room at a hotel, and he invited the co-conspirator (CC-1) to join him. Later that evening, investigators checked the hotel register at the Best Western Hotel, and learned that K-FRAGA had rented Room 214 for one night. Investigators saw K-FRAGA travel to the Best Western on multiple occasions that day.

10. At approximately 8:00 p.m. on August 16, 2017, K-FRAGA left the Best Western and drove to 45 Murphy Road in Hyannis, MA, the home of his father. K-FRAGA then left 45 Murphy Road and began driving back to the Best Western hotel. At approximately 9:25 p.m., investigators conducted a traffic stop in Hyannis of the Jeep Cherokee that K-FRAGA was driving. At the time of the stop, without prompting, K-FRAGA told investigators that investigators were going to be "really disappointed" because no drugs would be found on K-FRAGA. When queried as to why K-FRAGA would even mention drugs, given that this was just the inception of a traffic stop, K-FRAGA simply looked down, showing, I believe, that he had made an admission of narcotics trafficking to investigators.

11. K-FRAGA was then detained and transported to the Yarmouth State Police barracks. The Jeep Cherokee was also transported to the State Police barracks. Investigators then applied for, as pertinent here, federal search warrants to search the Jeep Cherokee, Room 214 of the Best Western, and 34 Balsam Way in Yarmouthport, which is the home of the Kevin and Alex FRAGA. These search warrants were issued by Magistrate Judge Marianne B. Bowler on August 17, 2017 at approximately 1:18 a.m.

12. Prior to the issuance of the search warrants, investigators listened to telephone calls between A-FRAGA and a number of other individuals. From my review of these calls, I believe that A-FRAGA had become aware that K-FRAGA had been arrested by the police. A-FRAGA received an incoming call from a female at approximately 9:22 p.m. This female told A-FRAGA that K-FRAGA had been arrested and that there had been six police cars assisting in the arrest. Then, A-FRAGA called a family member and relayed the information regarding K-FRAGA's arrest. A-FRAGA asked the family member for the number of an attorney. A-FRAGA then called K-FRAGA's girlfriend and said that his house (34 Balsam Way) was being raided, and that "they" were "fucked."

13. After the issuance of the warrants, investigators searched Room 214 of the Best Western. While securing the room to await the warrant, investigators discovered that two co-conspirators of K-FRAGA were inside the room. Upon entry by investigators, a fight ensued, and a bag of narcotics was ripped open by the co-conspirators. The narcotics inside this bag later field-tested positive for cocaine. After the issuance of the warrant, investigators searched the room and discovered a second bag that contained a tan powder, as well as a digital scale and "cutting" agent. Based on my training and experience, including the appearance, color, texture, and packaging of the substance, I believe that this second bag contained a mix of fentanyl and heroin. The second bag weighed approximately 115 grams with plastic packaging, and the remainder of the cocaine in the first bag weighed approximately 54 grams.

14. Investigators also searched 34 Balsam Way in Yarmouthport, the home of Alex and Kevin FRAGA. Investigators searched a bedroom that investigators believe belonged to A-FRAGA due to paperwork found inside the room. Inside the bedroom investigators found a bag containing a tan powder that, based on the appearance, color, texture, and packaging of the

substance, investigators believe contained a mixture of heroin and fentanyl. A digital scale was also found in the room, and this bag of suspected narcotics weighed approximately 30 grams.

15. Finally, investigators searched the black Jeep that K-FRAGA was driving. Investigators located a "hide" on the backside of the front passenger seat of the Jeep. Inside this hide, investigators located a bag containing a chunk of a hard-packed brown powder that, based on the appearance, color, texture, and packaging of the substance, I believe contains a mixture of heroin and fentanyl. This powder, with packaging, had a weight of approximately 165 grams. A second package in the hide contained a lump of off-white powder that, based on the appearance, color, texture, and packaging of the substance, I believe contained fentanyl. This second package had a combined weight, with packaging, of 136 grams. In addition, there were approximately 200 pills that I believe were made to mimic the look of oxycodone. However, based on a prior controlled purchase, together with the appearance, color, texture, and packaging of the pills, investigators believe that these were fentanyl pills. A third smaller bag contained a brown powdery substance that weighed approximately 25 grams. I believe that this bag contained a mixture of heroin and fentanyl. Finally, investigators discovered a stack of United States currency wrapped in a rubber band inside the hide.

16. Based on my training and experience, I believe that K-FRAGA and A-FRAGA possessed these narcotics (heroin/fentanyl and cocaine) with the intent to distribute said narcotics, in violation of Title 18, United States Code, Sections 841(a)(1) and 841(b)(1)(C), or, in the alternative, that they attempted to do so, in violation of Title 21, United States Code, Section 846.

MARC POWELL
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to me this the 17th day of August 2017

HON. MARIANNE B. BOWLER
United States Magistrate Judge
District of Massachusetts